1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GREGORY A. CHANDLER,

11            Petitioner,                    No. CIV S-11-567 JAM CHS

12       vs.

13   GREG LEWIS.

14                        FINDINGS AND RECOMMENDATIONS

15   _____/

16                           I.  INTRODUCTION

17          Chandler, a state prisoner, proceeds pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  At issue are his 2007 convictions in the Sacramento

19   County Superior Court, case number 06F05421, for which he is serving an aggregate prison

20   sentence of 50 years to life.

21                          II.  BACKGROUND[1]

22          Chandler began dating M.S. in February 2005 and later moved into her home.

23   While he lived there M.S. worked as a prostitute, paid the bills, and gave Chandler money.  He

24   refused to allow her to quit prostituting, complaining there would be no money for them to live.

25   _____

26          [1] *See People v. Chandler*, No. C056039, 2008 WL 4184632, slip op. at 1 (Cal.App. 3rd
     Dist. 2008).

                                            1

She was listed on the Internet as an escort and testified she had never had a pimp before Chandler.

In October 2005, Chandler met D.H.  The next month, in November 2005, Chandler moved out of M.S.'s house and into D.H.'s house.  In June 2006, Chandler left numerous messages on D.H.'s phone in which he threatened to assault and kill her.  D.H. believed his threats and feared he would do so.  The messages were played for the jury at his trial.

A jury convicted Chandler of making criminal threats to D.H. and pimping involving M.S.  The jury acquitted him of numerous other counts involving both victims which were based on facts not recounted here, including a charge of making criminal threats to M.S.  In a bifurcated proceeding, the court found true that Chandler had incurred three prior strikes within the meaning of California's habitual criminals or "three strikes" law and sentenced him to state prison for an aggregate term of 50 years to life.

Chandler appealed his convictions to the California Court of Appeal, Third District, where judgment was affirmed in an unpublished opinion.  Petition for review to the California Supreme Court was denied.

### III.  GROUNDS FOR RELIEF

The petition sets forth six alleged constitutional violations.  Chandler claims:

Ground One:   He was denied his right to trial by a fair and impartial jury;

Ground Two:   He was denied his right to appeal;

Ground Three: He was denied his right to the ineffective assistance of counsel on appeal;

Ground Four:  He was denied his right to confront and cross-examine witnesses against him;

Ground Five:  Police committed misconduct by coercing witnesses to file charges; and

Ground Six:   The trial court's denial of the defense motion to reduce the criminal threats conviction to a misdemeanor violated due process and constituted cruel and unusual punishment.

1    For the reasons that follow, the claims are without merit and relief should be

2    denied.

3    IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

4    An application for writ of habeas corpus by a person in custody under judgment of

5    a state court can be granted only for violations of the Constitution or laws of the United States.

6    28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

7    *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

8    This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

9    the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

10   U.S. 320, 326 (1997); see also *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under the

11   AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in

12   state court proceedings unless the state court's adjudication of the claim:

13   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
14   determined by the Supreme Court of the United States; or

15   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
16   State court proceeding.

17   28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

18   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

19   This court looks to the last reasoned state court decision to determine whether the

20   law applied to a particular claim by the state courts was contrary to the law set forth in the cases

21   of the United States Supreme Court or whether an unreasonable application of such law has

22   occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919.  The

23   state court's factual findings are presumed correct if not rebutted with clear and convincing

24   evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is

25   the habeas corpus petitioner's burden to show the state court's decision was either contrary to or

26   an unreasonable application of federal law.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

1                                   V.  DISCUSSION

2                  A.        Ground One: Fair and Impartial Jury

3                        1.        Additional Background[2]

4              On the first day of trial, defense counsel filed a motion in limine seeking to

5    exclude evidence that Chandler was allegedly affiliated with a prison gang.  Although Chandler

6    had gang tattoos suggesting he might have been affiliated with a prison gang, defense counsel

7    argued that neither victim had seen Chandler with a member of the gang.  Defense counsel

8    further noted that Chandler was 39 years of age and had not been convicted of a crime for 10

9    years, while gang members "tend to be youthful" and there was no recent evidence of affiliation

10   with the gang.  Conceding that the evidence might be relevant, defense counsel argued the

11   prejudicial affect outweighed any probative value.

12             The prosecutor explained he did not intend to introduce evidence that Chandler

13   was a "validated" gang member but argued Chandler's statements to both victims about his

14   membership in a prison gang were relevant to prove the victims' state of mind for purposes of the

15   charges of making criminal threats.  The prosecutor asserted that both victims claimed that

16   Chandler told them of his membership in the prison gang to show them how dangerous he could

17   be and to control them.

18             Defense counsel disputed that Chandler was currently or recently affiliated with a

19   prison gang, claiming the records of the Department of Corrections referred to information in

20   1996.  Defense counsel indicated that she doubted the prosecutor could present evidence from the

21   victims that Chandler had told them anything about the gang.

22             Although noting that reference to prison gangs would be prejudicial, the trial court

23   tentatively ruled the evidence of the effect of Chandler's membership in a prison gang on the

24   victims would be admitted for a limited purpose and the jury would be instructed that it was not

25

26       [2]  *See People v. Chandler*, 2008 WL 4184632, *supra* at 1-3.

4

offered to show defendant was a person of bad character.  Because defense counsel asserted it was not Chandler who informed the victims about the prison gang, the court scheduled an evidentiary hearing for the next morning for the victims to testify.  The court then finished ruling on the in limine motions and proceeded with jury selection.

After defense counsel introduced herself and Chandler, the trial court informed a panel of prospective jurors during voir dire about possible evidence of Chandler's affiliation with a prison gang.  Specifically, the trial court stated:

> [THE COURT:] I want to bring this to your attention because it's kind of important.  It may or may not come into evidence but there has- there may be representations that Mr. Chandler may well have some affiliation with a prison gang called the Black Gorilla Family.  If that does come into issue then, of course, I would give you a special instruction that that information can only be used in a limited way. [¶] That is to say, it cannot be used to show that he is a person of bad character or that it would make him show that he has a tendency to commit criminal behavior or that he is a bad person simply because he's a member of, if he is, a member of that organization. [¶] But, rather, it would come in to show the effect on one of the elements of the charges and I would show you that, in terms of the effect it may have on a person [who] is aware of that type of information. And it's not coming in for the truth of the matter. [¶] Now, I know that sounds like a lot of legal maybe mumbo jumbo and I may well have hurt you more than I helped you, but the bottom idea is that you can't consider it, if it comes in, to show he has a propensity to commit crimes or he's a bad character. [¶] It cannot come in for the truth that he is in fact a member, but it will come [in] to show some effect if a listener believes that the effect in terms of a certain mental state it would have on the listener. [¶] Did I do any better? [¶] Does everyone kind of understand and get the drift? [¶] Now after saying all that, is there some prospective jurors [who] feel it's just too overpowering and they can't follow basically what I just told you? Anyone feel that?

(Augmented Reporter's Transcript ("ART") at 22-23.)  Later that day, the trial court informed a second venire pool about the same potential evidence:

> [THE COURT:] There is some indication and I don't know how it may play out, that Mr. Chandler may have some affiliation with a black prison gang known as the Black Gorilla Family. And if in fact that comes out you will be instructed you may only consider that for a limited purpose. You may not consider that in terms of

5

1
2
3
4

> that he's a bad person or that he has a propensity to commit
> criminal offenses. [¶] It would come in to show the effect that it
> would have on maybe one of the people who- alleged victims in
> terms of their state of mind.  And that's the only way it may be
> used. [¶] Now, despite me telling you that, [are] there some of you
> who feel you cannot follow my instruction and would be
> automatically prejudiced against Mr. Chandler? Any of you? Okay.

5   (ART at 41-42.)

6          The following morning, D.H. and M.S. testified at an evidentiary hearing outside

7   the presence of the jurors.  The state appellate court summarized the substance of this

8   proceeding:

9
10
11
12
13
14

> Both testified concerning their fear of [Chandler] and his
> relationship with a prison gang.  M.S. testified that [Chandler] told
> he was a member of a prison gang, showed her the tattoo on his
> arm, and claimed he went to member meetings.  M.S. knew about
> the prison gang because her "illegal husband" had been a member.
> M.S. claimed defendant would tap his tattoo whenever she argued
> with him.  His membership in the prison gang kept her "in line"
> and made her more careful, knowing that even if he could not harm
> her, he had gang members who could.  M.S. was afraid that
> [Chandler] would learn she had contacted the police and he had
> contacted one of his gang members to harm her.

15
16
17
18
19
20

> D.H. entered the courtroom in glasses and a hood, fearing that
> defendant might have someone watching her. She testified that
> [Chandler] told her he was a member of a prison gang, explaining
> that when one of the members called him "to take care of
> somebody else" he would "hurt that person." D.H. had no
> knowledge of the prison gang prior to being with [Chandler]. She
> claimed that he talked about the prison gang every time he left for a
> "meeting." She stayed in the relationship with him because she was
> afraid, knowing what he was capable of, the "kind of gang" he was
> in and that he could send someone over "to get [her]."

21   *People v. Chandler*, *supra*, at 3.

22          As to M.S., the trial court precluded the prosecution from offering evidence

23   relating to the prison gang because "the probative value would be outweighed by the prejudice."

24   As to D.H., the court precluded the prosecutor from offering "the prejudicial language of the

25   [prison gang]" because the prosecutor could sufficiently show D.H.'s fear without the gang

26   evidence.

6

1    Subsequently, defense counsel made a motion for a new panel of prospective

2  jurors because the court had informed the jury of possible prison gang evidence.  The trial court

3  denied the motion for a new panel, noting that when it had informed the prospective jurors of

4  such evidence, the court indicated it "may or may not" be introduced and defense counsel voiced

5  no objection.

6              2.       Analysis

7    Chandler claims he was denied his right to a fair and impartial jury when the trial

8  court informed the prospective jurors there might be evidence of gang affiliation, but then

9  determined the evidence would not come it.  On appeal, the state court found no error:

> [W]e conclude that the trial court did not err in denying defense
> counsel's motion for a new panel. In instructing the prospective
> jurors, the court stated that evidence of [Chandler]'s affiliation
> with a prison gang, if any existed, might or might not be introduced
> at trial. The trial court further instructed the prospective jurors that
> any such evidence would be admitted only to show its effect on the
> state of mind of the alleged victims and that the evidence could not
> be used to show [Chandler] was a bad person or had a propensity
> to commit crimes. Even though the trial court's comments
> involved potentially inflammatory gang evidence, those comments
> were calculated to prevent any possible bias or prejudice that might
> flow from the mention of the possibility that such evidence would
> be admitted. Under these circumstances, the trial court acted well
> within its discretion in implicitly determining that the jury panel
> was not contaminated and in denying the motion for a panel.

18  *People v. Chandler*, *supra*, at 3.

19    The Sixth Amendment guarantees criminal defendants a verdict by impartial and

20  indifferent jurors.  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Turner v. State of*

21  *Louisiana*, 379 U.S. 466, 471-72 (1965) (holding that due process requires same); *Smith v.*

22  *Phillips*, 455 U.S. 209, 217 (1982) (holding that due process requires that a defendant be tried by

23  a jury capable and willing to decide the case solely on the evidence before it).  "Impartiality is... a

24  state of mind [for which] the Constitution lays down no particular tests and procedure is not

25  chained to any ancient and artificial formula."  *Irvin*, 366 U.S. at 724-25.  An impartial jury

26  consists of "jurors who will conscientiously apply the law and find the facts."  *Wainwright v.*

7

1   *Witt*, 469 U.S. 412, 423 (1985).  "Qualified jurors need not, however, be totally ignorant of the

2   facts and issues involved."  *Murphy v. Florida*, 421 U.S. 794, 800-801 (1975).  The

3   constitutional standard for juror impartiality requires only that the juror be able to "lay aside his

4   impression or opinion and render a verdict based on the evidence presented in court."  *Irvin*, 366

5   U.S. at 723; *see also Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984).

6          Here, Chandler does not allege that any particular juror or jurors were biased;

7   rather, his claim of juror bias is based on speculation that the trial court's comments infected the

8   potential jurors with bias.  As set forth, the trial court asked both venire pools whether potential

9   evidence of prison gang affiliation would affect their ability to be fair, and none of the jurors

10  responded affirmatively.  Thus the comments made were conditional, and the trial court

11  explained not only that such evidence might not materialize but also that if it were admitted, it

12  would be for a limited purpose and could not be used to prove criminal disposition.

13         Chandler cites no Supreme Court precedent requiring dismissal of a jury panel for

14  a trial court's comments about the possibility of prejudicial evidence being received where that

15  evidence is not ultimately received.  It appears there is no Supreme Court precedent directly on

16  point factually.  Nor is there any Supreme Court precedent with which fairminded jurists could

17  hold that the state court's decision conflicts.  *See Harrington v. Richter*, 131 S.Ct. 770, 786

18  (2011) (explaining that the applicable standard is whether "fairminded jurists could disagree on

19  the correctness of the state court's decision") (internal quotation marks omitted).  In sum,

20  Chandler fails to demonstrate that the state court's rejection of this claim was contrary to, or an

21  unreasonable application of clearly established Supreme Court precedent.  *See Carey v.*

22  *Musladin*, 549 U.S. 70, 77 (holding a state court's decision cannot be contrary to, or an

23  unreasonable application of, clearly established federal law if there is a "lack of holdings from"

24  the Supreme Court).

25         Chandler also fails to demonstrate prejudice.  On habeas corpus review, the

26  petitioner bears the burden of establishing that a constitutional error had a "substantial and

1  injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

2  619, 637 (1993).

3         Chandler's jury was admonished in their final instructions (1) "bias, sympathy,

4  prejudice, or public opinion" could not influence their verdict (CT at 404; RT at 446); (2) that

5  their verdict must be "based only on the evidence that has been presented to you in this trial" (CT

6  at 409; RT at 446); (3) that the defendant must be proven guilty beyond a reasonable doubt by the

7  evidence (CT at 413; RT at 449-450); and (4) that the evidence upon which they based their

8  verdict was limited to sworn testimony and exhibits (CT at 414; RT at 450-51).  These

9  instructions mitigated the already very slight danger that the jury would use the trial court's

10 remote comments made prior to trial as evidence of Chandler's bad character or his propensity to

11 commit crimes.  In the absence of any information to the contrary, it is presumed that the jury

12 followed these instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed

13 to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

14         In sum, Chandler fails to demonstrate the state court unreasonably applied

15 Supreme Court precedent regarding his right to a fair and impartial jury or that the comments

16 substantially and injuriously affected or influenced the jury's verdict in his case.  No relief is

17 available.

18         B.    Right to Appeal

19         In a state habeas corpus petition filed to the Sacramento County Superior Court,

20 case number 09F06994, Chandler claimed (1) the trial court erred by limiting the cross-

21 examinations of D.H. and M.S.; (2) the police coerced the victims into filing charges; and (3) the

22 trial court erred by denying his request to reduce criminal threats conviction to a misdemeanor

23 and striking one his prior strike convictions.  The petition was denied by the Sacramento County

24 Superior Court on the following basis:

25         Habeas corpus cannot serve a second appeal or substitute appeal
           [*sic*].  (*In re Harris* (1993) 5 Cal.4th 813, 829.)  This rule covers
26         matter that could have been raised on appeal but were not as well

9

1    as matter that were raised on appeal and decided [*sic*].  (*Ibid.*; see
     also *In re Dixon* (1953) 41 Cal.2d 756, 759; *In re Waltreus* (1965)
2    62 Cal.2d 218, 225.)

3    Petitioner's allegations that the trial court erred in excluding
     certain evidence and in refusing to reduce charges or strike strikes,
4    as well as the suggestion of law enforcement's pressuring the
     victims to cooperate are all matters that are part of the appellate
5    record.  This means that these claims could have been raised on
     appeal, although it appears that they were not; however, they
6    cannot now be the subject of a habeas petition.

7    Regarding Petitioner's claim that a Sacramento police detective
     coerced the victims into filing charges against Petitioner: Petitioner
8    subsequently had a trial on those charges.  If they were untrue, he
     had an opportunity to challenge them, and, in fact, he was acquitted
9    on many of the charged counts.  Thus, Petitioner's due process
     rights were adequately protected at trial.  Petitioner has not
10   described any law enforcement conduct that undermines the
     verdict.

11
     For the foregoing reasons,
12
     IT IS ORDERED that the petition is denied.
13

14   (*Gregory Allen Chandler, Sr.*, *On Habeas Corpus*, Case No. 09F06994, Order Denying Petition,

15   (Cal. Sup. Ct., December 8, 2009)).

16         In a subsequent petition for writ of habeas corpus (case number 164185) filed to

17   the California Court of Appeal, Third District, and to the California Supreme Court, Chandler

18   claimed the Sacramento Superior Court denied him his right to appeal when it declined to review

19   or rule on his claims raised in the previous petition, case number 09F06994.

20         Here, too, Chandler claims the California courts "failed to rule on claims" in

21   violation of his right to due process.  Chandler's federal claim is as follows:

22         Petitioner contends that he was denied his Fourteenth Amendment
           right to due process because the reviewing court denied his Writ of
23         Habeas Corpus (Case # 09F06994), because the federal claims on
           the writ of habeas corpus was not raised on direct appeal (Case #
24         C056039), a state appellate process that was beyond Petitioner's
           control [*sic*].
25

26   (*See* Petition at p.94.)  Chandler argues that he should not be faulted for his appellate counsel's

                                              10

1    failure to raise the claims on direct appeal, causing them to be procedurally defaulted, because

2    this circumstance was out of his control.

3              Presented with this claim, both the California Court of Appeal and the California

4    Supreme Court summarily denied it.  Chandler fails to demonstrate the state courts' rejection of

5    the claim was contrary to, or an unreasonable application of clearly established Supreme Court

6    precedent.

7              There is no independent federal constitutional right to a system of appellate

8    review.  *See Ross v. Moffitt*, 417 U.S. 600, 611 (1974) (citing *McKane v. Durston*, 153 U.S. 684

9    (1894)).  If a state provides for appellate and collateral review, however, the state must

10   implement such review in accord with due process.  *See Evitts v. Lucey*, 469 U.S. 387, 401

11   (1983) ("In short, when a State opts to act in a field where its action has significant discretionary

12   elements, it must nonetheless act in accord with the dictates of the Constitution- and, in

13   particular, in accord with the Due Process Clause.").

14             Nevertheless, Chandler fails to identify any Supreme Court precedent clearly

15   establishing a requirement that a state court conduct a review on habeas corpus in some manner

16   contrary to what occurred here in case number 09F06994.  The Supreme Court has never held

17   that a state procedural bar such as California's rule that "habeas corpus cannot serve a second

18   appeal or substitute appeal" violates federal due process where the default is alleged to be

19   counsel's fault.  To the contrary, the Supreme Court has consistently declined to review questions

20   of federal law decided by a state court if the decision of that court rests on a state law ground that

21   is independent of the federal question and adequate to support the judgment.  *Coleman v.*

22   *Thompson*, 501 U.S. 722, 729-30 (1991) ("The doctrine applies to bar federal habeas when a

23   state court declined to address a prisoner's federal claims because the prisoner had failed to meet

24   a state procedural requirement.  In these cases, the state judgment rests on independent and

25   adequate state grounds.")  This claim is without merit.

26   /////

1               C.       Ineffective Assistance of Appellate Counsel

2                   1.       Additional Background

3            Chandler's appellate counsel raised a single claim on direct appeal challenging the

4 trial court's pre-instruction to the jury pool regarding potential evidence that Chandler was a

5 member of a prison gang, as discussed in subsection A, *supra*.  Chandler claims appellate

6 counsel should have raised in addition the five issues set forth below which were listed as

7 potential grounds for appeal in the notice of appeal filed by trial counsel.

8            It is noted that Chandler has failed to develop the factual bases for some of

9 appellate counsel's alleged deficiencies.  Rather, as will be discussed, his contentions are mostly

10 conclusory.  Nevertheless, the factual bases underlying appellate counsel's alleged deficiencies

11 are explained where possible.

12                       Motion to sever

13            Before the start of trial, the defense moved to sever the counts against Chandler.

14 The trial court denied the motion; appellate counsel did not raise the issue.

15                 Defense motion to dismiss

16            Following the prosecution's case-in-chief, the defense made a motion to dismiss

17 counts one, four, five and nine of the information pursuant to section 995 of the California Penal

18 Code.  The motion was heard on March 2, 2007.  The trial court granted the motion as to count

19 five, reducing the charge to a misdemeanor, and denied the motion as to the remaining counts.

20 Despite the fact that he was subsequently found not guilty of counts one, four, five and nine,

21 Chandler claims appellate counsel rendered ineffective assistance in failing to challenge the trial

22 court's denial of this motion.

23                 Defense's trial objections

24            Chandler contends appellate counsel was ineffective for failing to raise issues

25 concerning "defendant's trial objections."  He provides no further allegations in support of this

26 alleged deficiency.

1    <u>Confrontation/ cross-examination of D.H. and M.S.</u>

2    M.S. testified at trial that D.H. called her on the telephone two times after

3    Chandler was arrested.  Chandler's attorney attempted to question M.S. about what D.H. told her

4    during those conversations.  The trial court ruled the evidence was inadmissible hearsay which

5    could not come in at that time; the court indicated the defense could recall M.S. after D.H.

6    testified if necessary for impeachment.  Subsequently D.H. confirmed in her testimony that she

7    spoke to M.S. over the phone in July 2006 and was cross-examined about what she said in those

8    conversations.

9    Chandler alleges "[c]learly the witnesses conspired with each other in each of

10   their phone conversations" and contends he was denied his right to confront witnesses against

11   him because the trial court did not allow defense counsel to question the two women about the

12   full content of their telephone conversations.  The record does not support this assertion.

13   Although the trial court ruled inadmissible M.S.'s hearsay testimony about what D.H. said on the

14   phone, as discussed, D.H.'s live testimony on the subject was admitted.

15   Chandler also contends he was denied his right to cross-examine M.S. about a

16   telephone message she left for the district attorney's office in which she allegedly stated that she

17   did not know what her testimony would be if she did not receive a response to her request for

18   money.  The trial court prohibited such a line of questioning by the defense, ruling it would be an

19   undue consumption of time and would tend to confuse and mislead the jury.

20   <u>Motion to reduce charges or strike prior convictions</u>

21   Prior to sentencing, Chandler moved pursuant to *People v. Romero*, 13 Cal.4th

22   497 (1996) to strike one or both of his prior felony strike convictions.  He also filed a motion

23   pursuant to section 17(b) of the California Penal Code to reduce his felony conviction for

24   criminal threats to a misdemeanor.  The trial court denied both motions and appellate counsel did

25   not raise either issue.

26   /////

2.      Analysis

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying the *Strickland* test to appellate counsel) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687, 697. Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

Appellate counsel does not have a constitutional obligation to raise every non-frivolous issue requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Often appellate counsel may properly omit an issue if counsel reasonably foresees little or no likelihood of success on that issue. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *Knowles v. Mirzayance*,129 S.Ct. 1411, 1422 (2009) ("Counsel is also not required to have a tactical reason-above and beyond a reasonable appraisal of a claim's dismal prospects for success- for recommending that a weak claim be dropped altogether."). The "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller*, 882 F.2d at 1434; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

The Supreme Court recently observed once again that "[s]urmounting *Strickland's* high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). The relevant question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 131 S. Ct. at 788.

1    Here, Chandler's ineffective assistance claim is vague, conclusory, and

2    unsupported by necessary factual allegations.  As to the issues he contends appellate counsel

3    should have raised, he makes no attempt to show they were as strong or stronger than the single

4    issue counsel did raise on appeal, or how the outcome of the appeal would have been different

5    had they been raised.  Instead he alleges only that appellate counsel should have, but did not raise

6    the issues on appeal.  A petitioner must do more than this in order to prevail.  *See*, *e.g.*, *Jones v.*

7    *Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("[C]onclusory suggestions that his... state appellate

8    counsel provided ineffective assistance fall short of stating a valid claim of constitutional

9    violation.") *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not

10   supported by a statement of specific facts do not warrant habeas relief.").

11          D.      Confrontation and Cross-Examination

12          Chandler contends he was denied his right to confrontation and cross-examination

13   when the court "did not allow defense counsel to question witnesses [M.S.] and [D.S.] about the

14   content of their cell phone conversations with each other."  He also claims he was denied his

15   right to confrontation when the trial court held the defense could not question M.S. about two

16   telephone messages she allegedly left for the district attorney's office.

17          Respondent contends this claim is procedurally barred.  The procedural bar issue

18   need not be decided because the claim clearly lacks merit.  *See Lambrix v. Singletary*, 520 U.S.

19   518, 525 (1997) (holding that for reasons of judicial economy an appellate court may pass on

20   deciding complicated procedural bar issues when a petition is "easily resolvable against the

21   habeas petitioner" on other grounds); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002)

22   ("[A]ppeals courts are empowered to, and in some cases should, reach the merits of habeas

23   petitions if they are, on their face and without regard to any facts that could be developed below,

24   clearly not meritorious despite an asserted procedural bar.").

25          The Confrontation Clause of the Sixth Amendment guarantees a criminal

26   defendant the right to be confronted with the witnesses against him; "[t]he main and essential

purpose of confrontation is to secure for the opponent the opportunity of cross-examination."
*Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  The Supreme Court has emphasized the policy
favoring expansive witness cross-examination in criminal trials.  *See Id.*; *Olden v. Kentucky*, 488
U.S. 227, 231 (1988).  The Confrontation Clause does not, however, guarantee unbounded scope
in cross-examination.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("The
Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-
examination that is effective in whatever way, and to whatever extent, the defense might wish."
(quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  Trial judges retain wide latitude to
impose reasonable limits on cross-examination that is repetitive or only marginally relevant.  *Van
Arsdall*, 475 U.S. at 679.  A violation of the Confrontation Clause is found only where the trial
court's ruling "limits relevant testimony, prejudices the defendant, and denies the jury sufficient
information to appraise the biases and motivations of the witness."  *United States v. Lo*, 231 F.3d
471, 482 (2000).  In addition, on habeas corpus, relief is only available if the error had a
substantial and injurious effect or influence in determining the jury's verdict.  *See Brecht*, 507
U.S. at 623.

Here, both M.S. and D.H. were cross-examined by defense counsel.  Chandler
identifies two limitations on their cross-examination by the trial court: (1) questioning of M.S.
about D.H.'s hearsay statements to M.S. on the phone, as discussed in the previous subsection;
and (2) questioning of M.S. about two telephone messages she allegedly left for the district
attorney's office asking about money payments, which the trial court held would constitute an
undue consumption of time and tend to confuse and mislead the jury.[3]

---

[3] The telephone messages were transcribed and provided to the defense in discovery.
According to Chandler's exhibit attached to the petition, M.S. stated in the first message, in
relevant part:

"I need someone to answer my question in regard to me coming to Sacramento.  I need to know
that my reimbursement money can be there so that when I come from Sacramento and be left on
my own, I don't need to wait four to six weeks to remain homeless and I still can't get a place
because people can't get everything coordinated.  I really would appreciate a return phone call.

1   First, Chandler's right to confrontation was not violated by the trial court's

2  limitation of questioning of M.S. about D.H.'s hearsay statements.  Although the testimony was

3  potentially relevant, it was excluded pursuant to a valid evidentiary rule.  The United States

4  Supreme Court has observed that "[t]he historical evidences leaves little doubt [ ] that the

5  [Confrontation] Clause was intended to exclude some hearsay."  *Ohio v. Roberts*, 448 U.S. 56,

6  63 (1980) (overruled on other grounds by *White v. Illinois*, 502 U.S. 346 (1992) and abrogated on

7  other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004)).  Moreover, exclusion of D.H.'s

8  hearsay statements during M.S.'s testimony did not prejudice Chandler or deny the jury sufficient

9  information to appraise M.S.'s biases and motivations.  The excluded hearsay came in anyway

10  when D.H. was herself cross-examined about what she said to M.S. on the telephone.

11   M.S.'s telephone messages were also excluded pursuant to a valid rule of

12  evidence.  *See* Cal. Evid. Code § 352; *Holmes v. South Carolina*, 547 US. 319, 326 (2006)

13  ("While the Constitution thus prohibits the exclusion of defense evidence under rules that serve

14  no legitimate purpose or that are disproportionate to the ends that they are asserted to promote,

15  well-established rules of evidence permit trial judges to exclude evidence if its probative value is

16  outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential

17  to mislead the jury.").  Here the limitation on cross-examination was not so complete as to

18  amount to a denial of the right of confrontation.  M.S. was cross-examined about her relationship

19  with Chandler, about letters she sent him in jail, about her telephone calls to D.H., and about her

20

21  [...] Uh, plane leaves tomorrow and I need to; cause um, if I can't get an answer, um, I don't
know what to; all I can say is I don't think I'd make a very good witness [*sic*].  Thank you."

22  M.S. allegedly stated in the second message, in relevant part:  "Hi, AJ.  This is [M.S.] My
number is [redacted].  I'm calling to make sure that there are no, that my name is not to be
23  mentioned anymore in the case for um, Gregory Allen Chandler.  I've opted out of um, being
assisted from Victim Witness; since there was no way that they could make sure that I would
24  have my money uh, to secure a permanent location, housing, when I got back to Las Vegas. [...]
Uh, again, I don't wish to be a part of the case.  If I am subpoenaed and forced to come to court, I
25  will, but I won't make a great witness.  This is already guaranteed.  Um, thank you.  Maybe next
time, you know, your office will investigate things sooner and actually take interest in the
26  victims."

contact with law enforcement.  In sum, there was sufficient cross-examination at trial to establish

potential bias, motivation, or lack of credibility on the part of M.S.

Chandler also fails to demonstrate prejudice.  He makes no attempt to show a

reasonable likelihood of a different result had counsel's cross-examination of M.S. not been

limited in these two ways.  No relief is available.

E.      Police Misconduct/ Witness Coercion

Chandler claims his due process rights were violated by police misconduct.  In

particular, Chandler asserts Sacramento Police Detective Sweeney coerced the victims into filing

charges during telephone interviews.  Respondent contends this claim, too, is procedurally

barred.  Nevertheless, it is recommended that it be rejected on the merits.  *See Lambrix*, 520 U.S.

at 525; *Franklin*, 290 F.3d at 1232.

Prosecutorial or police misconduct rises to the level of a constitutional violation

only where it "so infected the trial with unfairness as to make the resulting conviction a denial of

due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)).

As support for this claim, Chandler gives a lengthy and thorough statement of

facts detailing Detective Sweeney's contact with both witnesses and cites to Exhibit G of his

petition, which contains portions of various transcripts of telephone interview between Sweeney

and D.H.  None of this evidence shows any attempt on Sweeney's part to coerce either victim.

Chandler argues that Sweeney allegedly conducted his entire investigation on the phone, that

Sweeney never contacted him for a statement, and that Sweeney did not investigate D.H.'s

admitted prostitution.  No one of these allegations tends to evidence police coercion.

Accordingly, even assuming that allegations of police "coercing" witnesses to file charges states

a valid due process claim, the claim is factually without merit in this instance.

/////

/////

18

1          F.      Defense Motion to Reduce Conviction

2          As set forth, the defense moved pursuant to *People v. Romero*, 13 Cal.4th 497

3   (1996) to strike one or both of Chandler's prior felony strike convictions for sentencing purposes,

4   and moved pursuant to section 17(b) of the California Penal Code to reduce his felony criminal

5   threats conviction to a misdemeanor.  The trial court denied both motions.  Chandler contends

6   the trial court's denial of these motions violated his right to due process and constituted cruel and

7   unusual punishment.  Although respondent contends this claim is procedurally barred, the merits

8   should be reached since the claim is easily resolvable against Chandler.  *See Lambrix*, 520 U.S.

9   at 525; *Franklin*, 290 F.3d at 1232.

10          This claim is not cognizable because it relates solely to the application of a state

11  sentencing law.  A petitioner cannot "transform a state-law issue into a federal one merely by

12  asserting a violation of due process."  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).

13  Absent fundamental unfairness, federal habeas corpus relief is not available for a state court's

14  misapplication of its own sentencing laws.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Brown v.*

15  *Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on other grounds, 538 U.S. 901, remanded

16  to 66 F. App'x 136 (9th Cir. 2003) ("The district court correctly concluded that this state law

17  [*Romero*] claim is not cognizable on federal habeas review."); *Christian v. Rhode*, 41 F.3d 461,

18  469 (9th Cir. 1989) (petitioner not entitled to habeas relief on claim that state court improperly

19  used prior federal offense to enhance punishment); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19

20  (9th Cir. 1989) (claim that prior conviction was not a "serious felony" under California

21  sentencing law not cognizable in federal habeas corpus proceeding).  No fundamental unfairness

22  appears here and Chandler's due process claim fails.

23          Chandler also fails to demonstrate that the manner in which the sentence was

24  imposed constitutes cruel and unusual punishment.  Outside of the capital punishment context,

25  the Eighth Amendment of the United States Constitution "forbids only extreme sentences that are

26  grossly disproportionate to the crime." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (quoting

1   *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and

2   concurring in judgment)).  The United States Supreme Court has held that the gross

3   disproportionality principle is the only relevant clearly established law applicable to an Eighth

4   Amendment challenge to a sentence under section 2254.  *Lockyer v. Andrade*, 538 U.S. 63, 73

5   (2003).  The threshold for an inference of gross disproportionality is high.  Generally, so long as

6   the sentence imposed by the state court does not exceed statutory maximums, it will not be

7   considered cruel and unusual punishment under the Eighth Amendment.  *United States v.*

8   *McDougherty*, 902 F.2d 569, 576 (9th Cir. 1990); *United States v. Mejia-Mesa*, 153 F.3d 925,

9   930 (9th Cir. 1998) ("punishment within legislatively mandated guidelines is presumptively

10  valid").

11          The United States Supreme Court has upheld a term of life with the possibility of

12  parole for the offense of theft of $120.75 by false pretenses, under a recidivism statute which

13  accounted for the defendant's two prior offenses of fraudulent use of a credit card and passing a

14  forged check in the amount of $28.36; this life sentence did not offend the gross proportionality

15  principle of the Eighth Amendment.  *Rummel v. Estelle*, 445 U.S. 263, 265, 285 (1980).

16  Likewise, a term of life in prison without the possibility of parole was held not disproportionate

17  to the crime of possession of 672 grams of cocaine.  *Harmelin v. Michigan*, 501 U.S. 957, 1009

18  (1991).  In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Court upheld a decision of the California

19  Court of Appeal affirming a sentence of two consecutive terms of 25 years to life in prison for a

20  "third strike" conviction of theft of $150 worth of video tapes as a reasonable application of the

21  gross disproportionality principle.  *Id*. at 73-74.

22          In this case, Chandler was sentenced to a term of 50 years to life pursuant to

23  California's habitual criminals or "three strikes" law.  The trial court noted that his extensive

24  criminal history included prior convictions for possession of a controlled substance, felony

25  domestic violence, felony intimidation of a victim or witness, felony criminal threats, and felony

26  burglary, and found that he fell within the spirt of the three strikes law.  Chandler's third strike

sentence was reasonably imposed and his is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005.  No relief is available.

## VI.  CONCLUSION

For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be denied; and

2.  A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: November 21, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE